1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

BUNGIE, INC.,

11

                    Plaintiff,

12

          v.

13

ELITE BOSS TECH INCORPORATED,
11020781 CANADA INC., DANIEL
14
FAGERBERG LARSEN, ROBERT
JAMES DUTHIE NELSON, JOHN DOE
15
NO. 1 A/K/A "SLYTIGER" A/K/A
ARTHUR S. ADERHOLT, JOHN DOE
16
NO. 2 A/K/A "BADGER," JOHN DOE
NO. 3 A/K/A "LUZYPHER," JOHN DOE
17
NO. 4 A/K/A "GOODMAN," JOHN DOE
NO. 5 A/K/A "YIMOSECAI," JOHN DOE
18
NO. 6 A/K/A "RIDDELL," JOHN DOE
NO. 7 A/K/A "PISKUBI93," AND JOHN
19
DOES NO. 8-20,

20

                    Defendants.

Case No. 2:21-cv-1112

COMPLAINT FOR (1) COPYRIGHT
INFRINGEMENT, (2) CIVIL RICO
VIOLATIONS, (3) DMCA VIOLATIONS,
(4) CFAA VIOLATIONS, (5) BREACH OF
CONTRACT, (6) INTENTIONAL
INTERFERENCE WITH CONTRACTUAL
RELATIONS, (7) CPA VIOLATIONS, AND
(8) CIVIL CONSPIRACY

JURY DEMAND

21

22        Plaintiff Bungie, Inc. ("Bungie"), as and for its complaint against Defendants Elite Boss

23   Tech Incorporated, 11020781 Canada Inc., Daniel Fagerberg Larsen, Robert James Duthie

24   Nelson, John Doe No. 1 a/k/a "Slytiger" a/k/a Arthur S. Aderholt, John Doe No. 2 a/k/a

25   "Badger," John Doe No. 3 a/k/a "Luzypher," John Doe No. 4 a/k/a "GoodMan," John Doe No. 5

26   a/k/a "Yimosecai," John Doe No. 6 a/k/a "Riddell," John Doe No. 7 a/k/a "piskubi93," and John

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 1

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   Does No. 8-20, respectfully alleges as follows:

2                              **INTRODUCTION**

3       1.      This action arises out of Defendants' development, marketing, and sale of "cheat"

4   software – also known as hacks – designed to give players of Bungie's *Destiny 2* game an unfair

5   competitive advantage. As alleged below, that conduct, which violates a host of Federal civil and

6   criminal laws (including the Digital Millennium Copyright Act ("DMCA"), the Racketeer

7   Influenced and Corrupt Organizations Act ("RICO"), the Computer Fraud and Abuse Act

8   ("CFAA") and others), Washington state law, and common law torts, has caused Bungie

9   extensive damages. Worse, it has harmed the *Destiny 2* community, devalued the well-earned

10  accomplishments of *Destiny 2* players and taken a measure of the joy out of their play by tilting

11  the competitive playing field. Bungie now brings this action to recover its damages and protect

12  the gaming experience of the *Destiny 2* community.

13      2.      Bungie is the developer of the *Destiny* franchise. The current iteration of the

14  game, *Destiny 2*, is a shared-world, massively multiplayer online game ("MMO") experience

15  currently played by tens of millions of players worldwide.

16      3.      *Destiny* and its sequel *Destiny 2* have thrived on the support of their dedicated

17  player community since 2014, with consistent updates, multiple expansions, and constantly

18  refreshed features. The *Destiny* games cater to the preferences of a broad variety of players in

19  various ways: from Player vs. Environment ("PvE") challenges that can be tackled solo or in

20  cooperation with friends and other players, to Player vs. Player ("PvP") multiplayer modes

21  pitting players against each other in a competition for in-game rewards and reputation.

22      4.      Progress in *Destiny 2* is not delineated merely by success in its missions,[1] quests,[2]

23

24

---

25  [1] Campaigns designed to be tackled by 1-3 player teams, which feature a series of objectives.

    [2] Multi-step missions that reward players with high-powered loot.
26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 2

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

strikes,[3] and raids.[4] Aesthetic rewards and loot, including better and more powerful items for the player's character to wield or wear, are prizes for sustained play, for repeated success, and for the hard work a dedicated player puts towards their gaming. Some rewards are exclusive to difficult or highly competitive endgame content, and can be shown off by players to other players in order to celebrate their achievements.

5.    As in every game, however, some players prefer to cheat their way to success, utilizing a variety of "hacks" to artificially alter the game. Using cheat software, cheaters obtain computer assisted and near-perfect aim, radar displays identifying the location of competitors and enemies, the ability to see other players and environmental features through walls and other obstacles, the ability to walk or shoot through such obstacles, and other unfair advantages.

6.    Because *Destiny* 2 is an MMO, these cheats, unlike those that might be employed in other games, do not only impact the experience of the cheating gamer. For instance, a player who cheats in a traditional, single-player roleplaying – *e.g.*, to give themselves infinite ammunition or invincibility - will impact *only* their own experience of that game. An MMO is different. In an MMO, as in any game involving other competitors or a shared world, one player's cheating impacts all other players. Like steroid use in baseball, playing poker with x-ray vision, or videotaping an opposing team's signals in football, a player who cheats at *Destiny 2* is giving themselves a competitive advantage over honest players and altering the *shared* game. The cheating that Defendants induce and enable breaks the experience of *Destiny 2* and sabotages the enjoyment of honest players.

7.    Because *Destiny 2*'s commercial viability depends on users' enjoyment of the gaming experience, the damage caused by Defendants is difficult to recompense with money damages. Bungie promised its player community a vibrant, fun-filled game that they could return

---

[3] Replayable missions through a series of objectives that end with a battle against a "boss" or other high-power enemy.

[4] Raids are highly challenging endgame PvE content designed to be completable only by groups of players working cooperatively.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 3

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   to and enjoy with friends. Honest players express frustration and anger at playing against

2   cheaters and the perception that cheating is rampant – or, worse, ignored– can cause users to

3   abandon a game for other options not perceived as overrun by cheaters. As such, Bungie has

4   been forced to expend tremendous time and significant resources attempting to counteract cheat

5   software such as that developed and sold by Defendants. Bungie builds and licenses cheat

6   detection tools (known as anti-cheat software) at significant cost, and Defendants attempt to

7   develop software to avoid those anti-cheat measures. Honest players leave the game as their

8   enjoyment of the experience diminishes – users do not want to play a rigged game they can't win

9   without cheating or see their PvE accomplishments trivialized – and that costs Bungie additional

10   revenue. And the money and human resources Bungie must dedicate to catching and preventing

11   Defendants' illegal activity are a necessary but costly expense for a company dedicated to

12   preserving the *Destiny* experience for their players.

13           8.      What's more, the cheat loaders themselves, the programs by which users deploy

14   the various cheats and hacks into the game, can transform their unwitting users' personal

15   computers into proxies for a slew of illegal activities and render them exceptionally vulnerable to

16   malicious hacking. If players associate the foreseeable negative effects such activities cause to

17   their computers, such as performance slowdowns, with the *Destiny 2* game, that causes

18   additional commercial damage to Bungie.

19           9.      Bungie thus brings this action to enforce its contractual and intellectual property

20   rights, maintain the integrity of its product, recover for its losses, and defend its player base by

21   preventing Defendants from continuing to engage in the conduct that threatens its product and

22   players.

23                                           **PARTIES**

24           10.     Plaintiff Bungie, Inc. is a Delaware corporation with its primary place of business

25   at 550 106th Avenue NE, Suite 207, Bellevue, Washington 98004.

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 4

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1       11.     Defendant Elite Boss Tech, Inc. ("Elite Boss Tech") is a Canadian corporation

2 with a principal place of business located at 2001 Blvd Robert Bourassa, Suite 1700, Montreal,

3 Quebec.

4       12.     Upon information and belief, Elite Boss Tech operates the Wallhax website.

5       13.     Defendant 11020781 Canada Inc. ("110 Canada") is a Canadian corporation with

6 a principal place of business located at 495 Avenue Viger Ouest, Bureau 2106, Montreal,

7 Quebec.

8       14.     Upon information and belief, 110 Canada participates in the operation of the

9 Wallhax business.

10       15.     Upon information and belief, 110 Canada is involved in accepting payments for

11 the Wallhax business and otherwise handling its finances; upon purchase of cheat software from

12 Wallhax by wire transfer, bank details are provided for "PayPro Global Accounting on behalf of

13 11020781 Canada Inc."

14       16.     Upon information and belief, Defendant Daniel Fagerberg Larsen is a citizen of

15 Denmark, residing Iver Dahlsvej 5, Lunderskov, Denmark.

16       17.     Upon information and belief, Larsen is the administrator of the Wallhax website

17 who uses the username "Gokke" on the Wallhax message board forums.

18       18.     Upon information and belief, Larsen is an owner of the Wallhax business,

19 including Elite Boss Tech and 110 Canada.

20       19.     Upon information and belief, defendant Robert James Duthie Nelson is a citizen

21 of Canada residing at 495 Avenue Viger Ouest, Bureau 2106, Montreal, Quebec.

22       20.     Upon information and belief, Nelson is an owner of the Wallhax business,

23 including Elite Boss Tech and 110 Canada.

24       21.     Defendant John Doe No. 1 a/k/a "Slytiger" a/k/a Arthur S. Aderholt is a Wallhax

25 administrator and customer service specialist, whose true identity is currently unknown, that uses

26 the username "Slytiger" on the Wallhax forums.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 5

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    22.    Upon information and belief, Slytiger has written numerous press releases for

2  Wallhax using the alias "Arthur S. Aderholt."

3    23.    Defendant John Doe No. 2 a/k/a "Badger" is a Wallhax administrator and coder,

4  whose true identity is currently unknown, that uses the username "Badger" on the Wallhax

5  forums.

6    24.    Upon information and belief, Badger is one of the individuals who develop cheats

7  for the Wallhax business.

8    25.    Defendant John Doe No. 3 a/k/a "Luzypher" is a Wallhax senior support

9  specialist and a moderator of Wallhax's forums, whose true identity is currently unknown, that

10  uses the username "Luzypher" on the Wallhax forums.

11    26.    Upon information and belief, Luzypher is a citizen of the Netherlands.

12    27.    Defendant John Doe No. 4 a/k/a "GoodMan" is a Wallhax reseller, whose true

13  identity is currently unknown, that uses the username "GoodMan" on the Wallhax forums.

14    28.    Upon information and belief, GoodMan offers Wallhax cheats for sale and shares

15  his revenue and profit from such sales with Wallhax.

16    29.    Upon information and belief, GoodMan is a citizen of China.

17    30.    Defendant John Doe No. 5 a/k/a "Yimosecai" is a Wallhax reseller, whose true

18  identity is currently unknown, that uses the username "Yimosecai" on the Wallhax forums.

19    31.    Upon information and belief, Yimosecai offers Wallhax cheats for sale and shares

20  his revenue and profit from such sales with Wallhax.

21    32.    Upon information and belief, Yimosecai is a citizen of China.

22    33.    Defendant John Doe No. 6 a/k/a "Riddell" is a Wallhax forum moderator, whose

23  true identity is currently unknown, that uses the username "Riddell" on the Wallhax forums.

24    34.    Upon information and belief, in his role as a forum moderator, Riddell facilitated

25  the operation, marketing, and maintenance of the Wallhax business.

26    35.    Defendant John Doe No. 7 a/k/a "piskubi93" is a Wallhax reseller, whose true

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 6

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    identity is currently unknown, that uses the username "piskubi93" on the Wallhax forums.

2         36.     Upon information and belief, piskubi93 offers Wallhax cheats for sale and shares

3    his revenue and profit from such sales with Wallhax.

4         37.     Upon information and belief, piskubi93 is a citizen of China.

5         38.     Doe Defendants Nos. 8-20 are persons and parties whose identities are currently

6    unknown to Bungie, but who, upon information and belief, are both complicit in Defendants'

7    torts and members in fact of Defendants' racketeering enterprise, including cheat developers,

8    resellers, administrators, and other agents of the enterprise.

9    **JURISDICTION AND VENUE**

10        39.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

11   § 1331, in that Plaintiff asserts claims under federal law, including for copyright infringement,

12   trademark infringement, civil RICO, and violations of the Digital Millennium Copyright Act and

13   the Computer Fraud and Abuse Act, and supplemental jurisdiction over Bungie's state law

14   claims under 28 U.S.C. § 1367(a).

15        40.     This court has personal jurisdiction over Defendants because Defendants

16   consented to jurisdiction in the state and federal courts in King County, Washington. Upon

17   information and belief, each of the Defendants, or agents acting on their behalf, accepted the

18   terms of *Destiny 2*'s Limited Software License Agreement (the "LSLA"), which contains the

19   following forum selection clause: "you agree to submit to the personal jurisdiction of any federal

20   or state court in King County, Washington."

21        41.     Additionally, this court has personal jurisdiction over Defendants pursuant to

22   RCW 26.50.240, the Washington Long-Arm Statute, because the Defendants committed tortious

23   acts that caused Bungie injury in the State of Washington.

24        42.     Venue is proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the

25   events or omissions giving rise to the claims occurred in this judicial district and Defendants

26   have harmed Bungie in this judicial district, or, in the alternative, 28 U.S.C. § 1391(b)(3), in that

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 7

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   Defendants are foreign individuals and entities and therefore do not reside in a district within any

2   state, and, as such, if venue is not proper under 28 U.S.C. § 1391(b)(2), there is no judicial

3   district in which venue would otherwise be proper under Section 1391(b).

4                                              **BACKGROUND**

5   **I.      The *Destiny* Franchise**

6            43.      Bungie is the independent developer, owner, intellectual property rights holder,

7   and distributor of the video game *Destiny 2*, and the *Destiny* Franchise.

8            44.      *Destiny* 2 is a shared-world online first-person shooter available across multiple

9   platforms: Playstation 4 and 5, PC, and the Xbox One and Series X consoles.

10           45.      *Destiny 2*'s unique sci-fi fantasy setting, its acclaimed shooter gameplay, its

11  diversity of experiences and content, its social aspects, its action-packed pace of play, and its

12  continuously evolving content offerings have inspired many imitators and driven forward the

13  industry standard for AAA titles and live game content.

14           46.      A critical and commercial hit from its debut, *Destiny 2* now boasts a community

15  of tens of millions of players worldwide.

16           47.      Since its initial release in 2014, the *Destiny* Franchise has offered its players

17  continuous and consistent expansions and add-ons, which introduce new story content, new

18  gameplay modes, new weapons and items, and new gameplay mechanics. Following the release

19  of *Destiny 2* in 2017, Bungie continued this model, and has released several expansions,

20  including the most recent, *Destiny 2: Beyond Light*, with more on the way.

21           48.      To bridge the gap between these releases and to continue to provide its thriving

22  player base with additional content to experience, *Destiny 2* also introduced Seasons, in which

23  significant updates to the game are made alongside optional Season Passes that may be

24  purchased to provide players with additional rewards.

25           49.      The sale of these continued expansions and passes, and of virtual currency, serve

26  as essential vehicles of *Destiny 2*'s revenue, as the base game has transitioned to a free-to-play

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 8

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1  model.

2  50.     For its core gameplay experience, *Destiny 2* offers both Player v. Environment

3  (PvE) content and Player vs. Player (PvP) content.

4  51.     PvE content allows players to explore *Destiny 2*'s worlds and lore and tackle an

5  epic science fiction story. It pits players against the game itself, with each chapter of the saga and

6  vibrant, distinct world it introduces filled with diverse and challenging enemies to fight,

7  mysteries to explore, and items to collect, hunt, and chase down.

8  52.     *Destiny 2*'s PvE content can be tackled either single-player or cooperatively,

9  allowing players to team up with other players.

10  53.     As *Destiny 2* is an always-online shared world, each player's game will always be

11  populated and impacted by some number of other users, so a potential friend or ally is never too

12  far away.

13  54.     Even where players are not attempting to tackle PvE content together – whether

14  from the outset as part of a planned team or as a result of being matched into an *ad hoc* fireteam[5]

15  to complete a strike – other players in-game can and do attack enemies targeting other players,

16  join in "public events" – mini-missions that feature waves of enemies in particular locations,

17  with the promise of loot for successful completion – or otherwise impact the individual's gaming

18  experience.

19  55.     PvP content presents a more traditional multiplayer experience, allowing players

20  and fireteams to compete against each other.

21  56.     *Destiny 2* boasts continuous and automatic matchmaking, making participation

22  easy, and the competitive gameplay modes are typically quick and action-packed.

23  57.     Regardless of whether players are in PvP or PvE mode, *Destiny 2* gameplay

24  centers around earning rewards to power up or enhance a player's character, enabling access to

25

26  [5] Small squads of 2-6 players.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 9

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    more content and more difficult challenges.

2        58.    As players complete quests, strikes, and raids they are rewarded with loot: gear,

3    weapons, and other valuable items, the rarity and power of which can vary widely. Continued

4    and consistent accomplishment in PvE endgame content and in PvP performance earns the player

5    more than prestige in the community; it earns them the most powerful and impactful rewards the

6    game offers.

7        59.    But *Destiny 2* is more than just another shooter with online components.

8        60.    No *Destiny 2* player is required to purchase anything at all to play the game; the

9    base game is available to anyone, on any major gaming platform, who wants to download it.

10   Instead, players pay Bungie for additions to the base game: downloadable content including

11   expansions (additional campaigns and storylines), seasonal content, in-game currency ("Silver,"

12   which players can purchase for real money and use in the *Destiny 2* world to "purchase"

13   cosmetic items for their characters), and other in-game features and additions.

14       61.    In other words, unlike a boxed-game model which generates revenue by retailing

15   standalone versions of games, Bungie generates revenue from *Destiny 2* if and only if it is such a

16   successful and immersive experience that users who play the base game for free find it so

17   compelling and enjoyable that they want to buy the additional, optional content.

18       62.    Making *Destiny 2* free-to-play thus represented an enormous bet on the quality of

19   the experience Bungie had developed and the enthusiasm of the community that had flourished

20   around it.

21       63.    As such, cheat software such as Defendants', which harms non-cheating users'

22   gaming experience and thereby reduces the time they spend playing *Destiny 2* and their interest

23   in purchasing additional content, has a direct and negative impact on Bungie's bottom line.

24

25

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 10

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1

## II.    Bungie's Efforts to Prevent Cheating

2       64.     Because cheating has such negative consequences to Bungie – financially and

3   reputationally – and to its player community, Bungie expends considerable effort and resources

4   to prevent it.

5       65.     First, Bungie's license agreement, which every user who downloads *Destiny 2*

6   must agree to, expressly prohibits cheating. In executing the LSLA, players specifically agree

7   that they will not, among other things:

8       •   "hack or modify" the game;

9       •   "receive or provide 'boosting services,'[6] to advance progress or achieve results that

10          are not solely based on the account holder's gameplay"; or

11      •   "create, develop, modify, distribute, or use any unauthorized software programs to

12          gain advantage in any online or multiplayer game modes."

13      66.     Bungie has also developed cheat detection software.

14      67.     Bungie employs multiple specialists on their anti-cheating team.

15      68.     Over the years, and out of necessity as the ability to create free-to-play accounts

16   drew more cheating, Bungie has expanded its anti-cheating efforts with additional resources and

17   licensed anti-cheat tools.

18      69.     Bungie employs multiple security specialists working in conjunction with their

19   anti-cheating team.

20      70.     In the absence of relief against these Defendants, Bungie anticipates that they will

21   need to devote ever increasing personnel and resources to their anti-cheating efforts, incurring

22   more costs.

23

24   ───────────────

25   [6] Bungie users have Bungie accounts that they log in to in order to play *Destiny 2*, build statistics and
     accomplishments, and progress their characters. "Boosting services" typically involve a user paying a third party
26   "professional gamer" to access their Bungie account and play *Destiny 2* for them, so that their character's progress
     instead reflects the work and skill of the "ringer" who accessed the account.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 11

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

71.     Bungie's anti-cheat team flags and identifies how cheaters are attacking the game through constant monitoring of the *Destiny 2* system and how players are interacting with it.

72.     Bungie's anti-cheat team must review and investigate reports of cheating submitted by *Destiny 2* players in order to remain informed as to how the cheaters are attacking the game.

73.     Bungie's anti-cheat team must routinely update the game client to mitigate and counter cheating.

74.     Bungie's anti-cheat team must routinely improve the *Destiny 2* system to make it harder for cheaters to identify and attack game elements.

75.     By necessity, many of Bungie's anti-cheat team activities are reactive.

76.     Because it is a reactive process, Bungie's anti-cheating vigil can never cease.

77.     Bungie's constant vigilance requires continual investment in costly third-party tools.

78.     All this makes the cost of defending the *Destiny 2* system from cheaters exorbitantly expensive.

79.     Bungie spends upwards of roughly $1,250,000 per year on its anti-cheating measures, a sum that does not include the cost to Bungie of external expert resources, legal costs, forward-looking investments in anti-cheat infrastructure, or infrastructure costs used for but not exclusively dedicated to game security.

**III.     Defendants' Cheat Software**

80.     Defendants, in turn, have developed, market, and sell *Destiny 2* cheat software designed to circumvent Bungie's cheat detection efforts.

81.     The Wallhax cheat consists of two components, one which reveals game information not ordinarily available to players (the "ESP Hack") and one which provides software-assisted boosting to aiming and targeting functions (the "Aimbot").

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 12

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

82.     The ESP Hack provides a "heads-up display" or graphical overlay to the *Destiny 2* user interface.

83.     This overlay displays the location of all other characters on the map, whether they would ordinarily be visible to the player or not.

84.     The ESP Hack even allows players to see other players when they are behind walls or other obstacles.

85.     The ESP Hack provides important contextual information for the newly visible entities as well.

86.     The ESP Hack can be configured to identify other entities as friendly, hostile, or neutral by means of a color-coded outline.

87.     The ESP Hack can display a player, object, or entity's name in the overlay.

88.     The ESP Hack can display a visual "health bar" for each other entity on the map, showing how much damage they have taken and how much more they must take to be eliminated.

89.     The ESP Hack can display "trace lines" which show where a player is looking or aiming within the game.

90.     The ESP Hack includes "panic button" functionality to allow players to instantly hide all visual evidence of the hack with a single keystroke.

91.     The Aimbot allows the cheat software to control the aiming and targeting system used by *Destiny 2*.

92.     By and through this control, the Aimbot can ensure that any player can hit any target, anywhere the player wants.

93.     The Aimbot can be configured to deliver a critical head shot every time.

94.     The Aimbot includes an option to slow and smooth the aiming motions so that they appear more natural.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 13

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    95.    The specific purpose of this Aimbot smoothing feature is to avoid detection by

2    Bungie's anti-cheat software.

3    96.    These features, together and separately, provide players with a substantial

4    competitive advantage.

5    97.    These features and the advantages they provide are not available to users who do

6    not cheat.

7    98.    Defendants package their cheats with a "panic button" that, when pressed, turns

8    off all such features.

9    99.    This panic button exists explicitly to assist the cheater in evading detection.

10    100.   Defendants sell their cheat software to users who buy monthly subscriptions to the

11    cheat software.

12    101.   Defendants provide routine and specific support to the cheats they sell.

13    102.   Defendants, through social media and popular websites like YouTube, market and

14    advertise their cheats, inducing players to buy.

15    103.   Defendants have produced "sizzle reels"[7] of gameplay footage to show off the

16    unfair and illicit advantages their cheats provide.

17    104.   Defendants maintain a website that assures players that they are experienced and

18    long-term cheat developers.

19    105.   Defendants assure cheaters that their software is difficult to detect and that they

20    work around or bypass opposing anti-cheat measures.

21    106.   By purchasing and loading cheats they have purchased from Defendants, cheaters

22    break the balance and integrity of *Destiny 2*'s gameplay.

23    107.   Cheaters find unearned success, quicker access to rewards, and overwhelming

24    advantage in competition.

25    _____

26    [7] Per Merriam-Webster, a "sizzle reel" is "a short, usually flashy video used to promote a product, service, proposed project, etc."

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 14

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    108.    And Defendants recognize as much.

2    109.    On their own website, Defendants acknowledge that "in game exploits, glitches,

3    players cheating, bad lag and other multiplayer glitches" can frustrate players, "take the fun out

4    of [thei]r gaming and hurt [thei]r in-game rankings."

5    110.    Defendants affirmatively state that cheaters can "ensure that" non-cheating

6    players "don't even have a fighting chance" and that "[r]egardless of how much" non-cheating

7    players "play and improve at the game," cheaters "can ruin [players'] matches over and over."

8    111.    Defendants advertise that their cheat software will provide users the following

9    benefits:

10    • "Start Topping The Scoreboards Every Match You Play";

11    • "Immediately improve your in-game skills with our aimbot or ESP features";

12    • "In any FPS [first-person shooter] you'll always have a positive (if not completely

13       ridiculous) KDR[8]";

14    • "You can earn more rewards, faster, in any game you play";

15    • "With these types of cheat features you can … completely obliterate the

16       competition."

17    112.    Defendants are correct about the damage that their cheats do.

18    113.    Upon information and belief, Defendants must play *Destiny 2* to develop and test

19    their cheats; they themselves are cheaters.

20    114.    Each cheater violates the LSLA every time they cheat.

21    115.    Each cheater circumvents Bungie's anti-cheating measures every time they cheat.

22    116.    Defendants advertise their cheats to a wide audience.

23    117.    Upon information and belief, Defendants have established a series of websites

24    through which they offer their cheats: Wallhax.com, ArtificialSensei.com, SecureAC.io,

25

26    _____

[8] Kill-to-Death Ratio: how many enemies a player kills, on average, before the player is killed themselves.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 15

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   SecureCheat.xyz, SecureCheats.net, CODHax.com, GainOSaurusHax.com, CryptoCheats.com,

2   and PrivateCheatz.com.

3       118.    Defendants even created a "reseller program" to further propagate their cheats

4   through third-party wholesalers.

5       119.    Their cheats flagrantly alter and destroy the gameplay experience.

6       120.    Aimbots, display enhancements, and other cheats give significant competitive

7   advantages in PvP modes.

8       121.    Human players cannot compete with opponents who can operate outside the rules

9   of the space they play in.

10       122.    These illicit competitive advantages bring unearned wins.

11       123.    Repeated success bought by cheating creates an artificial glass ceiling beyond

12   which few legitimate players can find success.

13       124.    This concentration creates a perverse disincentive for the games' most dedicated

14   players; the harder they work, the better they get, the more cheaters they face, and the less

15   reward they can expect to achieve.

16       125.    This destroys the integrity of PvP gameplay modes, allowing cheaters to steal

17   wins from more skilled players.

18       126.    Similar cheats can also trivialize endgame PvE content, making the game's most

19   difficult enemies and raids simple.

20       127.    What once required community, discipline, skill, and innovation is reduced to a

21   mere transaction for a cheater.

22       128.    Cheaters thus accumulate ill-gotten rewards, from the game's most powerful

23   items to special in-game prizes and status symbols, to actual physical rewards through Bungie's

24   Rewards program.

25       129.    Players attempting to obtain these accomplishments legitimately are aware that

26   cheaters are cheating to obtain them.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 16

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    130.    These players experience tremendous frustration.

2    131.    They write articles about *Destiny 2*'s "problem with cheaters."

3    132.    Sometimes, they stop playing *Destiny 2* altogether.

4    133.    Bungie's anti-cheat technological measures are developed to protect player data

5    and game data, and to prevent outside influences from rewriting, changing, or manipulating any

6    of the above.

7    134.    This anti-cheating technology is built into the game, requiring cheaters to

8    circumvent it in order to cheat.

9    135.    The cost of cheating in lost players is significant.

10    136.    The cost of cheating in banned players is significant.

11    137.    The cost of cheating in the expense of policing cheating is significant.

12    138.    The cost of cheating in the expense of developing anti-cheat technological

13    countermeasures is significant.

14    **DEFENDANTS' WILLFULNESS**

15    139.    Upon information and belief, Defendants are fully aware that their conduct is

16    tortious and illegal, if not, perhaps, the full extent of their liability.

17    140.    Indeed, Defendants have gone to great lengths to hide their identities and

18    locations.

19    141.    Their press releases direct inquiries to a supposed agent in Arizona, Arthur S.

20    Aderholt. Mr. Aderholt does not exist, and his alleged address – 4107 Griffin Street, in Phoenix

21    Arizona – does not exist.

22    142.    Wallhax has also associated itself with a purported address of 124 Briercliff Road,

23    New York, NY 10019; that address does not exist.

24    143.    Defendants' Wallhax website includes "terms of use" that purport to require users

25    to pay "$30,000 per day" for accessing the website if they are employees or agents of a number

26    of game development studios (not, interestingly enough, including Bungie).

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 17

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

144.    Defendants' websites are registered through service providers such as WhoisPrivacyCorp. and NameSilo LLC, which offer customers the ability to hide their identities when registering websites.

145.    Upon information and belief, Defendants have gone to such trouble to hide their identities in the misplaced belief that doing so would shield them from liability for their tortious conduct.

146.    Moreover, Defendants have recently taken (ineffective) steps to avoid being caught.

147.    By June, 2021, Bungie had sued one cheat developer (GatorCheats) and had sent cease and desist letters to others.

148.    In June, 2021, the Defendants who control the Wallhax website removed the *Destiny 2* cheat from the Wallhax.com "Cheat Status" page.

149.    Soon after June 10th, 2021, the Defendants who control the Wallhax website added the word "Destiny" to the Wallhax.com forum's profanity filter.

150.    This effectively censors the word, making any attempt to search for and locate the *Destiny 2* cheat, and the reviews and support for it, substantially more difficult.

151.    Upon information and belief, the cheat is still available in Defendants' cheat loader.

152.    Upon information and belief, the cheat still loads successfully when activated through the cheat loader.

153.    Upon information and belief, Defendants are still supporting the *Destiny 2* cheat and making it available to users who previously purchased it.

154.    Upon information and belief and given the nature of Defendants' cheat software and their subscription pricing model, the cheat cannot load unless Defendants' server authenticates the user's hardware ID ("HWID") and confirms the user has an active subscription.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 18

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    155.   Upon information and belief, Defendants took active steps to hide their *Destiny 2*

2    cheat in hopes of avoiding Bungie's notice.

3    156.   Defendants did so while continuing to clandestinely support the cheat for their

4    subscribers, in order to continue to profit from activity they knew to be wrongful.

5                              **FIRST CAUSE OF ACTION**

6                              **(Copyright Infringement)**

7    157.   Bungie repeats and realleges the allegations of Paragraphs 1-156 of this

8    Complaint as though fully set forth herein.

9    158.   Bungie is the holder of multiple copyright registrations for *Destiny 2*: Registration

10   No. TX 8-933-655, covering the *Destiny 2* software, and Registration No. PA 2-282-670,

11   covering *Destiny 2* as an audiovisual work.

12   159.   Defendants have infringed Bungie's copyrights in *Destiny 2* in multiple ways.

13   160.   Defendants created a 'sizzle reel' for their cheat software and posted that sizzle

14   reel online in order to market the cheat software.

15   161.   The sizzle reel includes *Destiny 2* artwork and animations covered by Bungie's

16   copyright in *Destiny 2* as an audiovisual work.

17   162.   Bungie did not authorize Defendants' public performance of its copyrighted work.

18   163.   Upon information and belief, Defendants' unauthorized public performance had

19   its intended effect, and materially increased Defendants' sales of its *Destiny 2* cheat software.

20   164.   In addition, Defendants' cheat software infringes Bungie's exclusive right to

21   create derivative works of *Destiny 2*, in two ways.

22   165.   First, upon information and belief, Defendants' cheat software works via DLL

23   injection, utilizing code designed to hook onto and hijack specific pieces of *Destiny 2* code

24   covered by Registration No. TX 8-933-655.

25   166.   Upon information and belief, Defendants' *Destiny 2* cheat software only works

26   within, and in conjunction with and as an emendation of, Plaintiff's copyrighted *Destiny 2* code.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 19

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

167.    As such, Defendants *Destiny 2* cheat software is a derivative work of *Destiny 2*.

168.    In addition, Defendants' *Destiny 2* cheat software creates visual elements that are displayed as an overlay on, and within, the *Destiny 2* visual display.

169.    Indeed, Defendants' "ESP" feature creates a visual overlay on the *Destiny 2* graphics, displaying for the cheater the location of enemies (including, in PvP mode, other players).

170.    By so doing, Defendants' cheat software annotates Bungie's copyrighted *Destiny 2* audiovisual work.

171.    The combined audiovisual work displayed to the user by the interaction between Bungie's *Destiny 2* software and Defendants' cheat software is based on – but meaningfully different from – Bungie's copyrighted *Destiny 2* audiovisual work.

172.    As such, Defendants infringe Bungie's copyright in *Destiny 2* as an audiovisual work each time that their cheat software creates an unauthorized derivative work of *Destiny 2*.

173.    In the alternative, Defendants induce and enable individual *Destiny 2* players to create an unauthorized and infringing derivative work each time they deploy the cheat software.

174.    Moreover, as alleged in Count Five below, Defendants' creation and distribution of *Destiny 2* cheat software was in violation of the Bungie LSLA.

175.    Upon information and belief, Defendants, or their agents, specifically downloaded *Destiny 2* for purposes of creating cheat software in violation of the LSLA.

176.    Because Defendants never intended to adhere to the LSLA terms, their initial downloads of *Destiny 2*, which enabled their creation of the cheat software, was unauthorized and infringing.

177.    Defendants' copyright infringement was willful.

178.    Upon information and belief, Defendants were aware at all times of the high probability that their creation of cheat software based on and in connection with Bungie's copyrighted *Destiny 2* software, and which annotated and amended the *Destiny 2* audiovisual

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 20

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   display, infringed Bungie's copyrights.

2       179.    Defendants' infringement was for commercial gain.

3       180.    Defendants sell licenses to their cheat software for $29.95 per month, depending

4   on the game.

5       181.    Upon information and belief, Defendants have sold more than $1,000 of cheat

6   software during at least one 180-day period.

7       182.    Bungie has incurred and will continue to incur enormous expense as a result of

8   Defendants' copyright infringement.

9       183.    Bungie has lost considerable revenue as a result of Defendants' copyright

10  infringement.

11      184.    As a result of the foregoing, Bungie is entitled to an award of damages in an

12  amount to be proven at trial.

13      185.    Alternatively, Bungie is entitled to maximum statutory damages of $150,000 for

14  each copyrighted work infringed, or in such other amount as may be proper under 17 U.S.C. §

15  504(c).

16      186.    Bungie is entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. §

17  505.

18      187.    Bungie is also entitled to an award of all of Defendants' profits from its sale of

19  infringing works.

20      188.    As a result of Defendants' acts and conduct, Plaintiff has sustained and will

21  continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate

22  remedy at law. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined

23  and restrained by this Court, Defendants will continue to contribute to infringement of Plaintiff's

24  copyrights. Plaintiff is entitled to injunctive relief to restrain and enjoin Defendants' continuing

25  unlawful conduct.

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 21

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1

## SECOND CAUSE OF ACTION

2

### (Civil RICO, 18 U.S.C. § 1962(a), (b), & (c))

3      189.    Bungie repeats and realleges the allegations of Paragraphs 1-188 of this

4  Complaint as though fully set forth herein.

5      190.    Defendants have derived income from a pattern of racketeering activity.

6      191.    Defendants have reinvested all or a part of that income in an enterprise which is

7  engaged in activity affecting interstate commerce.

8      192.    Larsen, Slytiger, Badger, Luzypher and Riddell, along with Elite Boss Tech and

9  110 Canada, and their owners (if any other than Larsen and Nelson), agents, and employees, the

10  related cheat sites they have operated, and together with the participants in Wallhax's "reseller"

11  program (such as GoodMan, Yimosecai, and piskubi93) and, for purposes of predicate acts of

12  criminal copyright infringement and wire fraud, users of Defendants' cheat software, constitute

13  an association-in-fact (the "Wallhax Enterprise").

14      193.    Defendants have participated in the conduct of the Wallhax Enterprise's affairs

15  through the pattern of racketeering activity detailed below.

16      194.    The Wallhax Enterprise is engaged in interstate commerce, as, upon information

17  and belief, Defendants' sales are made to individuals in multiple States.

18      195.    The Wallhax Enterprise is involved in foreign commerce, in that at least some

19  Defendants are based in foreign countries and, upon information and belief, at least some of

20  Defendants' sales are made to individuals in the United States.

21      196.    The Wallhax Enterprise's activities affect interstate and foreign commerce, in that

22  they affect Bungie's business.

23      197.    Defendants received income from the below described pattern of racketeering

24  activity via the Wallhax Enterprise's sales of Defendants' cheat software.

25      198.    Upon information and belief, at least some of the income so derived was

26  reinvested in the Wallhax Enterprise, to, among other things, fund the development, marketing,

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 22

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   and sale of cheats, including the *Destiny 2* cheat software.

2       199.    Upon information and belief, Defendants maintain control of the Wallhax

3   Enterprise via the income derived from the below described pattern of racketeering activity.

4       200.    The Wallhax Enterprise's pattern of racketeering activity is longstanding,

5   continuing, and has targeted and damaged multiple businesses, including Bungie.

6       201.    Upon information and belief, the Wallhax Enterprise's pattern of racketeering

7   activity, conducted through other websites owned or controlled by Defendant Nelson, is more

8   than a decade old.

9       202.    Indeed, the Wallhax Enterprise has developed and deployed cheats for the

10  following other games, to name a few: (a) *Apex Legends* by Respawn Studios, *Dead by Daylight*

11  by Behavior Interactive, *Fall Guys* by Mediatonic, *Hood* by Sumo Digital, *Among Us* by

12  Innersloth, *Ark* by Studio Wildcard, *Chivalry 2* by Torn Banner Studios, *Fallout 76* by Bethesda

13  Softworks, *Sea of Thieves* by Rare, *Mordhau* by Triternion, *Star Wars Battlefront 2* and

14  *Battlefield 5* by DICE, and *Warframe* by Digital Extremes (collectively, the "Other Games").

15      203.    Upon information and belief, the Wallhax Enterprise's conduct with respect to the

16  Other Games is similar to its conduct with respect to the *Destiny 2* cheat, and violates similar

17  civil and criminal statutes.

18      204.    The Wallhax Enterprise has announced its intention to develop cheat software for

19  additional games (such as for the forthcoming *Halo: Infinite* game by Microsoft).

20  **Predicate Acts:**

21              I.  Wire Fraud (18 U.S.C. § 1343)

22      205.    Defendants' cheat software is an integral part of a scheme to obtain property from

23  Bungie by means of false or fraudulent pretenses.

24      206.    Bungie offers its players rewards – both in-game and real-life property that

25  players can obtain – for their game play.

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 23

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    207.    Such rewards are things of value, which third parties have in the past paid to

2    purchase from those players who legitimately received them.

3    208.    Moreover, player progress in gameplay and character levels is a thing of value, as

4    reflected by the fact that third parties offer to obtain such progress for gamers for a fee.

5    209.    Each and every time a player using Defendants' cheat software logs into the

6    *Destiny 2* game, they are implicitly and falsely representing to Bungie that they are in

7    compliance with the LSLA and are not using cheat software.

8    210.    Thus, any player progress or rewards obtained by players using Defendants' cheat

9    software are obtained under false and fraudulent pretenses.

10    211.    Defendants' cheat software is designed to avoid Bungie's detection, specifically

11    in order to enable such fraud.

12    212.    In addition, Defendants obtained the *Destiny 2* software they used to develop the

13    *Destiny 2* cheats through fraud; as alleged above, and upon information and belief, Defendants

14    had a present intention to breach the LSLA and hack *Destiny 2* when they purported to agree to

15    the LSLA and download the game.

16    213.    Defendants' use of the interstate wires in connection with this scheme is

17    pervasive: in the initial download of *Destiny 2*, in, upon information and belief, email and

18    telephonic communications during the development of their cheat software, in their web-based

19    marketing, sales, and support for the cheat software, in the users' download of the cheat

20    software, and in each individual use of the cheat software during a *Destiny 2* gaming session.

21                            II.  Criminal Copyright Infringement

22    214.    As alleged above, Defendants' conduct constitutes criminal copyright

23    infringement under 17 U.S.C. § 506.

24    215.    Defendants have committed multiple acts of criminal copyright infringement,

25    over a significant period of time, with each instance of fraudulently downloading, developing a

26    "hack" for, and selling its cheat software for *Destiny 2* and each of the Other Games being a

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 24

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   separate instance of criminal copyright infringement.

2   III.   <u>Money Laundering (18 U.S.C. § 1956 & 1957)</u>

3   216.   In selling licenses to its cheat software, Defendants derived proceeds from

4   specified unlawful activity – the wire fraud and criminal copyright infringement alleged above.

5   217.   Upon information and belief, Defendants have utilized such proceeds to promote

6   the development and sales of their cheat software, in violation of 18 U.S.C. § 1956(a)(1)(A)(ii).

7   218.   Upon information and belief, Defendants have engaged in monetary transactions

8   involving such proceeds in amounts greater than $10,000, in violation of 18 U.S.C. § 1957.

9   *                          *                          *

10   219.   As alleged above, Bungie has been significantly damaged by Defendants' pattern

11   of racketeering activity.

12   220.   Bungie has suffered reputational damage as a result of Defendants' cheat software

13   and scheme to defraud.

14   221.   Bungie has incurred significant expense as a result of Defendants' cheat software

15   and scheme to defraud.

16   222.   Bungie has lost significant revenue as a result of Defendants' cheat software and

17   scheme to defraud.

18   223.   As such, Bungie is entitled to an award of its damages, in an amount to be proven

19   at trial, treble damages and attorneys' fees as allowed under the RICO statute.

20   224.   In addition, Bungie is entitled to injunctive relief as authorized under 18 U.S.C. §

21   1964(a), directing Defendants to cease marketing, selling, or supporting their *Destiny 2* cheat

22   software.

23   **<u>THIRD CAUSE OF ACTION</u>**

24   **(Circumvention of Technological Measures, 17 U.S.C. § 1201(a))**

25   225.   Bungie repeats and realleges the allegations of Paragraphs 1-224 of this

26   Complaint as though fully set forth herein.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 25

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    226.    Bungie is the owner and holder of all intellectual property rights and interests in

2    its games, including copyrights.

3    227.    Bungie developed extensive anti-cheating technological measures that it put in

4    place precisely to curb the type of software Defendants develop, market, and use.

5    228.    Bungie's mitigation efforts are extensive and ongoing, incorporating efforts such

6    as monitoring player movements for unusually rapid or responsive behavior and validating

7    client-generated values to ensure that they are within expected ranges.

8    229.    Bungie also controls what data is and is not visible to *Destiny 2* users. While

9    *Destiny 2*'s servers are aware at all times of the positions of every player and computer-

10   generated enemy or obstacle, the *Destiny 2* client software does not provide all of this

11   information to the player.

12   230.    Instead, the *Destiny 2* client software renders this data in an intentionally

13   imprecise fashion which has substantial implications for player strategy and behavior.

14   231.    Moreover, consistent with its intention of limiting access to *Destiny 2* to those

15   players who comply with the LSLA, Bungie bans accounts of players it catches cheating,

16   denying them further access to *Destiny 2*.

17   232.    Defendants manufacture, import, offer to the public, provide, or otherwise traffic

18   in cheat software which includes functionality, the sole purpose of which is to breach Bungie's

19   technological protection measures, access its functions without authorization, and impair the

20   integrity of the *Destiny 2* software and system.

21   233.    Defendants also manufacture, import, offer to the public, provide, or otherwise

22   traffic in cheat software which includes functionality solely to alter the artificial movements

23   exhibited by player within the game when they are using Defendants' software, allowing these

24   players' cheating to remain undetected by Plaintiff's anti-cheat mitigation technology.

25   234.    Circumventing Plaintiff's anti-cheat mitigation technology, which functions to

26   control and limit access to *Destiny 2* either directly or by identifying to Bungie which accounts it

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 26

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1  must ban, is a primary function of Defendants' product.

2  235.  These features of Defendants' product have no commercially significant purpose

3  beyond circumventing Plaintiff's anti-cheat mitigation technology.

4  236.  Defendants explicitly market their product as designed to circumvent Plaintiff's

5  anti-cheat mitigation technology, which functions to control and limit access to their work.

6  237.  As alleged above, use of cheat software is a breach of the LSLA rendering any

7  subsequent use of the *Destiny 2* game unlicensed and infringing.

8  238.  Defendants thus manufacture, import, offer to the public, provide, and otherwise

9  traffic in a technology, product, service, and device primarily designed to circumvent protection

10  afforded by technological measures that effectively protects Bungie's rights in *Destiny 2*.

11  239.  Defendants' conduct has caused, and will continue to cause, irreparable harm to

12  Bungie.

13  240.  As such, Bungie is entitled to injunctive relief, an order directing the destruction

14  of Defendants' *Destiny 2* cheat software, an award of statutory damages in the maximum amount

15  of $2,500 per instance of Defendants' *Destiny 2* cheat software that Defendants sold or licensed,

16  Defendants' profits attributable to their violations of 17 U.S.C. § 1201 pursuant to 17 U.S.C. §

17  1203(c), and Bungie's costs and attorneys' fees pursuant to 17 U.S.C. § 1203(b).

18  **FOURTH CAUSE OF ACTION**

19  **(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B))**

20  241.  Bungie repeats and realleges the allegations of Paragraph 1-240 of this Complaint

21  as if fully set forth herein.

22  242.  The *Destiny 2* servers host the *Destiny 2* Server Software, which creates the

23  virtual world of *Destiny 2*.

24  243.  The *Destiny 2* servers and software oversee the interaction of the player

25  characters, non-player characters, and environmental elements of the game.

26  244.  Players must access *Destiny 2*'s servers to connect to and play the game.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 27

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    245.    In order to access *Destiny 2*'s servers, players must install the *Destiny 2* client

2    software.

3    246.    The *Destiny 2* client software has no functionality other than to allow players to

4    connect to the *Destiny 2* server software, enter the virtual world of *Destiny 2*, and play the game.

5    247.    As part of this functionality, the *Destiny 2* client software collects and maintains

6    data and information within its memory space about the position, characteristics, and actions of

7    the player character, and communicates this information to the *Destiny 2* server software in an

8    active and interactive fashion.

9    248.    Installation of the *Destiny 2* client software requires players to read and accept the

10   LSLA.

11   249.    The LSLA expressly provides that "All title, ownership rights, and intellectual

12   property rights in and to the Program and any copies thereof are owned by Bungie."

13   250.    The LSLA further expressly provides that "Your license confers no title or

14   ownership in this Program, and should not be construed as a sale of any rights in this Program."

15   251.    The *Destiny 2* client software is directly related to and operates in conjunction

16   with the *Destiny 2* servers and server software, both by virtue of their symbiotic function and

17   under the terms of the LSLA

18   252.    The system consisting of the *Destiny 2* servers, the *Destiny 2* server software, the

19   *Destiny 2* client software, and the data communications between them operates both interstate

20   and internationally at all times and thereby operates in a manner affecting interstate and

21   international commerce.

22   253.    The *Destiny 2* system, including the *Destiny 2* client software and the memory

23   space it occupies, is therefore a protected computer.

24   254.    The LSLA protects the integrity of the *Destiny 2* system by prohibiting users from

25   hacking or modifying the *Destiny 2* client software.

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 28

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   255.   Defendants, acting in concert with users who deploy their cheat software, obtain

2   data from within the *Destiny 2* client software's memory space that the users are not authorized

3   to access – specifically the positional information used in Defendants' "ESP" display.

4   256.   In addition, Defendants are fully aware that users who deploy their cheat software

5   do so in violation of the LSLA, and that access to the *Destiny 2* client software memory space by

6   such users is entirely unauthorized.

7   257.   In accessing the *Destiny 2* client software's memory space without authorization,

8   Defendants' software obtains information from the *Destiny 2* system to enable the presentation

9   of the "ESP" display on the users' computers.

10   258.   In addition, by accessing the *Destiny 2* client software's memory space without

11   authorization, Defendants' software takes control of the aiming function of the *Destiny 2* client

12   software, enabling the player to fire with perfect accuracy every time.

13   259.   As a result of this conduct, Defendants' software endows cheating users with

14   significant advantages not available to players who play the game honestly.

15   260.   These advantages enable cheating players to achieve results within the game,

16   including within the game's highly popular and competitive PvP mode, which do not reflect their

17   actual ability, skill, or investment of time and effort into the *Destiny 2* game.

18   261.   When the values stored within the *Destiny 2* client software's memory space

19   which represent these fraudulent achievements are communicated to the *Destiny 2* servers and

20   server software, these values become a trusted and accepted part of the game.

21   262.   The *Destiny 2* system takes actions based on these trusted but fraudulent values in

22   ways that affect the cheating player, other players, and the environment itself.

23   263.   This impairment to the integrity of the *Destiny 2* system and software is a direct

24   result of the Defendants' unauthorized access to the *Destiny 2* system via the *Destiny 2* client

25   software memory space.

26

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    264.    Bungie has suffered a loss of greater than the $5,000 statutory minimum in the

2    costs of responding to Defendants' hacking.

3    265.    As such, Bungie is entitled to injunctive relief and an award of its compensatory

4    damages in an amount to be proven at trial.

5                              **FIFTH CAUSE OF ACTION**

6                              **(Breach of Contract)**

7    266.    Bungie repeats and realleges the allegations of Paragraphs 1-265 of this

8    Complaint as though fully set forth herein.

9    267.    The LSLA is a valid, binding contract between Bungie and each individual player

10   of *Destiny 2*.

11   268.    *Destiny 2* cannot be played unless the user agrees to Bungie's LSLA.

12   269.    The LSLA is displayed in full for the user in the game client prior to the user's

13   first play.

14   270.    The LSLA is also made easily and readily available on Bungie's website.

15   271.    Defendants could not have developed their cheat software without playing

16   *Destiny 2*.

17   272.    Upon information and belief, Defendants, or their agents acting on their behalf,

18   agreed to the LSLA.

19   273.    The LSLA prohibits users from commercially exploiting the *Destiny 2* system or

20   any of its parts.

21   274.    The LSLA prohibits users from "copy[ing], reproduce[ing], distribut[ing],

22   display[ing] or us[ing] any part of [*Destiny 2*] except as expressly authorized by Bungie."

23   275.    The LSLA prohibits users from copying *Destiny 2* onto any hard drive or other

24   storage device other than as occurs during the initial download.

25   276.    The LSLA prohibits users from "reverse engineer[ing], deriv[ing] source code,

26   modify[ing], decompile[ing], disassembl[ing], or create[ing] derivative works of [*Destiny 2*], in

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 30

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    whole or in part."

2          277.   The LSLA prohibits users from "hack[ing] or modify[ing *Destiny 2*], or

3    create[ing], develop[ing], modify[ing], distribut[ing], or us[ing] any unauthorized software

4    programs to gain advantage in any online or multiplayer game modes."

5          278.   Upon information and belief, in developing, marketing, and selling their cheat

6    software, Defendants have breached each and every one of those provisions.

7          279.   Defendants' sale of *Destiny 2* cheat software is a commercial exploitation of the

8    *Destiny 2* system and parts of its software.

9          280.   Upon information and belief, as alleged above, Defendants' cheat software

10   operates via DLL injection, using a part of the *Destiny 2* software in a manner not authorized by

11   Bungie.

12         281.   Upon information and belief, developing the cheat software required Defendants

13   to copy the *Destiny 2* program onto additional hard drives or storage devices.

14         282.   Upon information and belief, developing the cheat software required Defendants

15   to reverse engineer, derive source code, modify, decompile, and/or disassemble the *Destiny 2*

16   program.

17         283.   As alleged above, Defendants' cheat software is, and also creates, a derivative

18   work of the *Destiny 2* program.

19         284.   And, of course, Defendants' cheat software is an unauthorized program players

20   use to gain advantage in *Destiny 2*'s online and multiplayer player game modes.

21         285.   Defendants have thus repeatedly breached the LSLA.

22         286.   Bungie has incurred and will continue to incur enormous expense as a result of

23   Defendants' breaches of the LSLA.

24         287.   Bungie has lost considerable revenue as a result of Defendants' breaches of the

25   LSLA.

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 31

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    288.    As a result of the foregoing, Bungie is entitled to an award of damages in an

2    amount to be proven at trial.

3                          **SIXTH CAUSE OF ACTION**

4                **(Intentional Interference with Contractual Relations)**

5    289.    Bungie repeats and realleges the allegations of Paragraphs 1-288 of this

6    Complaint as though fully set forth herein.

7    290.    Defendants were generally and specifically aware that any *Destiny 2* user to

8    whom they sold their *Destiny 2* cheat software was bound by the LSLA.

9    291.    Defendants were aware that any player who used their *Destiny 2* cheat software

10   would thereby breach the LSLA's prohibition on hacking or modifying *Destiny 2* to gain an

11   advantage in its online and multiplayer modes.

12   292.    Indeed, *Destiny 2* only provides online and multiplayer modes, and Defendants

13   specifically marketed their cheat software as providing an advantage in such modes.

14   293.    Moreover, Defendants were aware that their cheat software created a derivative

15   work of *Destiny 2* each time its ESP feature was used, and therefore that their users' deployment

16   of ESP would breach the LSLA.

17   294.    Defendants induced every player to which they sold a cheat subscription to breach

18   the LSLA each time such player used the cheat software.

19   295.    Defendants induced and caused such breaches by allowing *Destiny 2* players

20   access to their cheat software and providing support for such cheat software.

21   296.    Because Defendants' creation and distribution of the cheat software was in

22   violation of their own obligations to Bungie under the LSLA, they induced and/or caused the

23   breaches by other *Destiny 2* users through improper means.

24   297.    As a direct and proximate result of Defendants' actions, Bungie suffered damage

25   in an amount to be proven at trial, including but not limited to a loss of goodwill among users of

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 32

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    Plaintiff's game, diversion of Plaintiff's resources to attempt to detect and prevent the use of the

2    Cheating Software, and decreased profits.

3                            **SEVENTH CAUSE OF ACTION**

4              **(Violation of the Washington Consumer Protection Act, RCW 19.86.020)**

5         298.    Bungie repeats and realleges the allegations of Paragraphs 1-297 of this

6    Complaint as though fully set forth herein.

7         299.    Defendants' practices occurred in trade or commerce, in order to sell their cheat

8    software.

9         300.    As alleged in Counts 1-6 above, Defendants' actions were unlawful.

10        301.    Moreover, there is a strong public interest in protecting content creators from the

11   unlawful hacking, copying, and disruption of their work, as well as in preventing the spread of

12   malware.

13        302.    As a result of the foregoing, Bungie is entitled to an award of damages in an

14   amount to be proven at trial, and treble damages and attorneys' fees as allowed under the statute.

15                            **EIGHTH CAUSE OF ACTION**

16                                  **(Civil Conspiracy)**

17        303.    Bungie repeats and realleges the allegations of Paragraph 1-302 of this Complaint

18   as if fully set forth herein.

19        304.    Defendant Larsen helms an enterprise of individual and corporate cheat retailers,

20   developers, and resellers.

21        305.    Defendants agreed to act together in connection with the unlawful and tortious

22   conduct described above.

23        306.    Upon information and belief, Defendants are aware of the wrongfulness of their

24   conduct.

25

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 33

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1   307.   This conspiracy directly harmed Bungie, through lost business, an injured

2   reputation, and the significant expense of its anti-cheating measures.

3   308.   As a result of the foregoing, Bungie is entitled to an award of damages in an

4   amount to be proven at trial.

5   **JURY DEMAND**

6   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to

7   all issues so triable in this action.

8   **PRAYER FOR RELIEF**

9   WHEREFORE, Plaintiff Bungie, Inc., prays for the following relief:

10   A.   That judgment be entered in Plaintiff's favor against Defendants on all applicable

11   claims;

12   B.   That Defendants and their officers, agents, representatives, servants, employees,

13   heirs, successors, assigns, and all other requisite participants in Defendants'

14   enterprise be preliminarily and permanently enjoined from:

15   (1) Infringing, inducing, or enabling others to infringe Plaintiff's
16   copyrights;

17   (2) Creating, writing, developing, advertising, promoting, and/or offering
     for sale or otherwise any software that infringes Plaintiff's copyrights;
18

19   (3) Descrambling, decrypting, avoiding, bypassing, removing,
     deactivating, or impairing a technological measure that controls access to
20   Plaintiff's copyrighted works;

21   (4) Manufacturing, importing, offering to the public, providing, or
     otherwise trafficking in any technology, product, service, device,
22   component, or part thereof that is primarily designed or produced for the
     purpose of circumventing Plaintiff's technological measure(s) that
23   effectively controls access to a work; That has only limited commercially
     significant purpose or use other than to circumvent a technological
24   protection measure that effectively controls access to a work; and/or that
     is marketed by Defendants for use in circumventing technological
25   protection measure(s) that effectively control access to a work;

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 34

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

(5) Manufacturing, importing, offering to the public, providing, or otherwise trafficking in any technology, product, service, device, component, or part thereof that is primarily designed or produced for the purpose of circumventing protection afforded by technological measure(s) that effectively protects a right of Plaintiff in a work or a portion thereof; that has only limited commercially significant purpose or use other than to circumvent protection afforded by technological protection measure(s) that effective protect a right of Plaintiff in a work or a portion thereof; and/or that is marketed by Defendants for use in circumventing protection afforded by technological protection measure(s) that effective protect a right of Plaintiff in a work or a portion thereof; and

(6) Aiding or assisting another person or entity in any of the activities described in (1) - (5);

C.      An order requiring that Defendants immediately destroy all copies of *Destiny 2* or any derivative work thereof in their possession or control;

D.      An order requiring that Defendants immediately destroy all copies of any cheats for *Destiny 2*;

E.      An order requiring Defendants to immediately and permanently disable all extant cheating software;

F.      An order forbidding Defendants from developing, manufacturing, and/or selling any cheats for any ensuing releases of Bungie titles;

G.      An award to Plaintiff of restitution and damages, including, but not limited to, compensatory, statutory (including enhanced statutory damages for willful infringement, violation of Washington's Uniform Trade Secrets Act, and for RICO), punitive damages, and all other damages permitted by law;

H.      That Plaintiff be awarded pre-judgement and post-judgment interest on all damages awarded against Defendants;

I.      An award to Plaintiff of its costs incurred in this suit as well as reasonable attorneys' fees; and

J.      For such other relief as the Court deems just and proper.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 35

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121

1    DATED this 18th day of August, 2021.

2

3                                       By: s/ *Brian W. Esler*

4                                       Brian W. Esler, WSBA No. 22168
                                        MILLER NASH LLP
5                                       Pier 70
                                        2801 Alaskan Way, Suite 300
6                                       Seattle, WA 98121
                                        Telephone: (206) 624-8300
7                                       Fax: (206) 340-9599
                                        Email: brian.esler@millernash.com
8
                                        Akiva M. Cohen, New York Bar No. 4328969
9                                       (*pro hac vice* pending)
                                        KAMERMAN, UNCYK, SONIKER
10                                      & KLEIN, P.C.
                                        1700 Broadway
11                                      New York, NY 10019
                                        Telephone: (212) 400-4930
12                                      Email: acohen@kusklaw.com

13                                      Dylan M. Schmeyer, Colorado Bar No. 50573
                                        (*pro hac vice* pending)
14                                      KAMERMAN, UNCYK, SONIKER
                                        & KLEIN, P.C.
15                                      2600 S. Rock Creek Parkway #36-202
                                        Superior, CO 80027
16                                      Telephone: (719) 930-5942
                                        Email: dschmeyer@kusklaw.com

17                                      Attorneys for Plaintiff

18

19    4831-2706-3798.1

20

21

22

23

24

25

26

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, ETC. - 36

MILLER NASH LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, STE 300
SEATTLE, WASHINGTON 98121